# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation, | ) 1:06-cv-01745-AWI-SMS |
| | ) |
| | ) FINDINGS AND RECOMMENDATION RE: |
| Plaintiff, | ) PLAINTIFF'S APPLICATION FOR |
| v. | ) DEFAULT JUDGMENT AND PERMANENT |
| | ) INJUNCTION (DOC. 11) |
| MATTHEW EVANS, an individual, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

Plaintiff is proceeding with a civil action in this Court. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 72-302(c)(19). Pending before the Court is Plaintiff's motion for default judgment for statutory damages, attorney's fees and costs, and a permanent injunction, which was filed on August 20, 2007, with a supporting memorandum and declaration of Katherine M. Dugdale, and was served on Defendant Matthew Evans by mail at the address listed on the proof of service of summons.

The motion came on regularly for hearing on October 12, 2007, at 9:30 a.m. in Courtroom 7 before the Honorable Sandra M. Snyder, United States Magistrate Judge. Katherine M. Dugdale appeared telephonically on behalf of Plaintiff; Defendant Matthew

Evans appeared on his own behalf, and his father was also present. The Court had received and reviewed all the papers. The Court had a colloquy with Defendant Evans; however, the Court informed Defendant that pursuant to Local Rule 78-230(c), because Defendant had not filed opposition, Defendant would not be allowed to be heard in opposition to the motion.[1] After argument by Plaintiff, the matter was submitted to the Court.

    I. Entitlement to Default Judgment

    A court has the discretion to enter a default judgment against one who is not an infant, incompetent, or member of the armed services where the claim is for an amount that is not certain on the face of the claim and where 1) the defendant has been served with the claim; 2) the defendant's default has been entered for failure to appear; 3) if the defendant has appeared in the action, the defendant has been served with written notice of the application for judgment at least three days before the hearing on the application; and 4) the court has undertaken any necessary and proper investigation or hearing in order to enter judgment or carry it into effect. Fed. R. Civ. P. 55(b); Alan Neuman Productions, Inc. v. Albright, 862 F.2d 1388, 1392 (9th Cir. 1988). Factors that may be considered by courts in exercising discretion as to the entry or setting aside of a default judgment include the nature and extent of the delay, Draper v. Coombs, 792 F.2d 915, 924-925 (9th Cir. 1986); the possibility of prejudice to the plaintiff, Eitel v. McCool, 782

---

[1] Although there was some discussion of Defendant's unsuccessful efforts to find counsel and his confusion with respect to court papers, Defendant had not and has not moved to set aside his default; thus, these matters were not before the Court at the hearing. The Court informed Defendant that it would proceed to file findings and recommendations, and thereafter there would be a period within which to file objections.

F.2d 1470, 1471-72 (9th Cir.1986); the merits of plaintiff's
substantive claim, id.; the sufficiency of the allegations in the
complaint to support judgment, Alan Neuman Productions, Inc., 862
F.2d at 1392; the amount in controversy, Eitel v. McCool, 782
F.2d at 1471-1472; the possibility of a dispute concerning
material facts, id.; whether the default was due to excusable
neglect, id.; and the strong policy underlying the Federal Rules
of Civil Procedure that favors decisions on the merits, id.

A default judgment generally bars the defaulting party from
disputing the facts alleged in the complaint, but the defaulting
party may argue that the facts as alleged do not state a claim.
Alan Neuman Productions, Inc. v. Albright, 862 F.2d 1388, 1392.
Thus, well pleaded factual allegations, except as to damages, are
taken as true; however, necessary facts not contained in the
pleadings, and claims which are legally insufficient, are not
established by default. Cripps v. Life Ins. Co. of North America,
980 F.2d 1261, 1267 (9th Cir. 1992); TeleVideo Systems, Inc. v.
Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987).

A. Service, Default

The proof of service filed on December 14, 2006, establishes
that service of the summons, complaint, and related documents on
Defendant was effected on December 4, 2006, by personal delivery
of the documents upon Defendant Matthew Evans at an address
located in Riverbank, California.

This service complies with Fed. R. Civ. P. 4(e)(2).

The Court notes that the docket does not reflect that
Defendant ever responded to the complaint, and the declaration of
Jennifer N. Chiarelli in support of the request for entry of

3

1  default filed on January 26, 2007, establishes that Defendant did
2  not plead in response to the complaint or otherwise defend
3  against the complaint. (Decl. at 2.) At the hearing, counsel for
4  Defendant represented to the Court that Defendant had called
5  Plaintiff's counsel's firm after the time to answer had passed,
6  but Dugdale did not speak with Defendant personally.

7       The docket reflects that Defendant's default was entered on
8  February 1, 2007.

9            B. <u>Notice</u>

10      A defaulting party is entitled to written notice of the
11  application for default judgment unless the party has not
12  appeared in the action. Fed. R. Civ. P. 55(b)(2). An appearance
13  for the purpose of Rule 55 need not be a formal one and may
14  consist even of informal contacts made by the defaulting party
15  where the defaulting party demonstrates a clear purpose to defend
16  the suit. <u>In re Roxford Foods v. Ford</u>, 12 F.3d 875, 879-81 (9th
17  Cir. 1993).

18      Here, there is no information regarding the extent of any
19  contacts by Defendant with the Plaintiff or Plaintiff's counsel
20  in the declaration submitted in support of the motion. However,
21  the proofs of service attached to the application reveal that the
22  moving papers were served by mail on Defendant on August 20,
23  2007, at the address at which service of the summons and
24  complaint was effected and which Defendant confirmed at the
25  hearing on the motion was his address. Thus, regardless of
26  Defendant's status with respect to appearance, it appears that
27  Defendant has received notice of the application for default
28  judgment.

1        C. <u>Liability</u>

2        Because claims that are legally insufficient are not

3    established by a party's default, a court in considering an

4    application for default judgment must determine whether the

5    claims upon which a plaintiff seeks a default judgment are

6    legally sufficient. It is the party's burden to demonstrate to

7    the Court that under the pertinent law, the Plaintiff's claims,

8    as alleged, are legally sufficient.

9        Plaintiff asserts that the facts alleged in the complaint

10   establish claims of copyright infringement, trademark

11   infringement, violation of the Lanham Act by false designation of

12   the origin of the software, and unfair competition.

13        1. <u>Copyright Claim</u>

14        An infringer of copyright is liable for actual damages and

15   any additional profits of the infringer attributable to the

16   infringement. 17 U.S.C. § 504(a). An infringer is anyone who

17   violates any of the exclusive rights of the copyright owner as

18   provided by sections 106 through 118. 17 U.S.C. § 501(a).

19   Copyright protection subsists in original works of authorship,

20   including pictorial and graphic works. 17 U.S.C. § 102. The owner

21   of a copyright has the exclusive rights to perform or authorize

22   the reproduction of the copyrighted work in copies, prepare

23   derivative works based on the copyrighted work, distribute

24   copies to the public by sale or other transfer of ownership, and

25   display the copyrighted work publicly. 17 U.S.C. § 106.

26        Thus, to prevail on a claim for infringement of copyright

27   under 17 U.S.C. § 501, Plaintiffs must establish that Defendant

28   violated an exclusive right of the copyright owner as provided in

5

1  17 U.S.C. §§ 106, 501(a). <u>Elektra Entertainment Group Inc. v.</u>
2  <u>Crawford</u>, 226 F.R.D. 388, 392-93 (C.D.Cal. 2005). This means that
3  to establish a prima facie case of direct infringement,
4  Plaintiffs must show 1) ownership of the allegedly infringed
5  material, and 2) the infringer's violation of at least one
6  exclusive right granted to copyright holders under 17 U.S.C. §
7  106. <u>Marder v. Lopez</u>, 450 F.3d 445, 453 (9th Cir. 2006).

8      Here, Plaintiff alleged that it develops, markets,
9  distributes, and licenses computer software programs, including
10 Microsoft Windows XP Professional (Windows XP Pro), an operating
11 system for which it holds a valid copyright, duly registered with
12 the United States Copyright Office. (Cmplt. pp. 2-3.) Defendant
13 advertised, marketed, and distributed computer software,
14 including software bearing Microsoft's registered copyrights; in
15 or about February 2006, Defendant distributed counterfeit Windows
16 XP Pro software components to a customer. Thereafter, Plaintiff
17 notified Defendant by letter that the distribution infringed
18 Plaintiff's property rights and further demanded cessation of the
19 infringing conduct, but in October 2006, Defendant distributed to
20 an investigator counterfeit Windows XP Pro software components.

21     Thus, the complaint adequately stated a claim for
22 infringement of copyright. <u>See</u>, <u>Microsoft Corp. v. Sellers</u>, 411
23 F.Supp.2d 913, 918-19 (E.D.Tenn 2006) (unauthorized dealing in
24 infringing copies of copyrighted software Windows XP Pro and
25 Windows 2000 Pro constituted copyright infringement).

26             2. <u>Trademark Claim</u>
27     As to the claim regarding infringement of a federally
28 registered trademark, 15 U.S.C. § 1114(a) provides that a person

6

is liable in a civil action by a registrant of a registered mark
for various remedies if the person, without the consent of the
registrant, uses in commerce any reproduction, counterfeit, copy,
or colorable imitation of a registered mark in connection with
the sale, offering for sale, distribution, or advertising of any
goods or services on or in connection with which such use is
likely to cause confusion, or to cause mistake, or to deceive. It
has been held that in order to prevail on such a claim, the
Plaintiff must establish a protected interest in the thing
infringed as well as a likelihood of consumer confusion;
registration is prima facie evidence of a protected interest, and
establishing that a substantial segment of consumers and
potential consumers have mentally associated the mark and a
single source of the product is also sufficient. <u>Levi Strauss &
Co. v. Blue Bell, Inc.</u>, 778 F.2d 1352, 1354-55 (9th Cir. 1985).

Plaintiff alleges that it had duly and properly registered
specified trademarks and a service mark in the United States
Patent and Trademark Office on the principal register, including
for Microsoft Windows. (Cmplt. p. 3.) Further, Defendant
advertised, marketed, and distributed computer software,
including software imitating software bearing Microsoft's
registered trademarks, logos, and service mark; in or about
February 2006, Defendant distributed counterfeit Windows XP Pro
software components to a customer. Thereafter, Plaintiff notified
Defendant by letter that the distribution infringed Plaintiff's
property rights and further demanded cessation of the infringing
conduct, but in October 2006, Defendant distributed to an
investigator counterfeit Windows XP Pro software components. (<u>Id.</u>

7

1  p. 4.)

2      It was also alleged that Defendant's conduct constituted

3  infringement of Plaintiff's federally registered trademarks and

4  service mark in violation of the Lanham Trademark Act, including

5  but not limited to 15 U.S.C. § 1114(1). The trademarks and

6  service mark were the means by which Plaintiff's software was

7  distinguished from the software or products of others in the same

8  or related fields; because of Plaintiff's long, continuous, and

9  exclusive use of the marks, they have come to mean and are

10 understood by customers, end users, and the public to signify

11 software or service of Plaintiff, and the infringing materials

12 that Defendant has and is continuing to use, offer, and

13 distribute are likely to cause confusion, mistake, or deception

14 as to source, origin, or authenticity. (Cmplt. p. 6.) Defendant's

15 conduct was undertaken with the purpose of misleading, deceiving,

16 or confusing customers and the public as to the origin and

17 authenticity of the infringing materials, and of trading upon

18 Plaintiff's goodwill and business reputation. (Id. p. 7.)

19     Plaintiff has thus adequately alleged a claim for trademark

20 infringement under the Lanham Act. See Microsoft Corp. v.

21 Sellers, 411 F.Supp.2d 913, 918-19 (E.D.Tenn. 2006) (dealing in

22 commerce by unauthorized distribution of registered Microsoft

23 software constituted, under circumstances in which consumers were

24 sure to be confused, constituted a violation of the Lanham Act).

25            3. False Designation of Origin, etc.

26     As to Plaintiff's claim of false designation of origin and

27 unfair competition, 15 U.S.C. § 1125(a) provides:

28            (a) Civil action

                            8

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

    (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
    (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

The statute covers misrepresentation of the origin of production as well as geographic origin. Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 29 (2003). It requires determination of whether or not the public is likely to be deceived or confused by the similarity of the marks. Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1178 (9th Cir. 1988)

Plaintiff alleged that the long, continuous, and exclusive use of the trademarks and service mark, which distinguished Plaintiff's product from the software of others in the same or related fields, as well as distinctive displays, logos, icons, graphic images, and packaging (all collectively referred to "Microsoft visual designs") had caused them to come to mean and to be understood by customers, end users, and the public to signify software or services of Plaintiff; however, Defendant had used Plaintiff's name, marks, visual designs, and packaging that was virtually indistinguishable from Microsoft visual designs in connection with its goods and services, with the wilful purpose

of misleading, deceiving, or confusing customers and the public as to the origin and authenticity of the goods and services offered, marketed, or distributed in connection with Plaintiff's marks, name, and imitation visual designs, and of trading upon Plaintiff's goodwill and business reputation. Such conduct constituted false designation of origin, false description, and false representation that the imitation visual images originated from or were authorized by Plaintiff, in violation of the Lanham Trademark Act, 15 U.S.C. § 1125(a). (Cmplt. p. 8.)

Plaintiff alleged the necessary facts concerning the Defendant's conduct and the likelihood of confusion. Distribution of unauthorized and infringing copies of Microsoft software constitutes a violation of § 1125(a) of the Lanham Act by falsely designating the origin of the software distributed. Microsoft Corp. v. Sellers, 411 F.Supp.2d 913, 919 (E.D.Tenn. 2006). Thus, Plaintiff has stated a claim for false designation of origin and unfair competition.

### 4. California Common Law Unfair Competition

Common law claims of unfair competition and actions pursuant to Cal. Bus. & Prof. Code § 17200 (defining unfair competition as including unlawful, unfair, or fraudulent business acts or practices) are "substantially congruent" to claims made under the Lanham Act. Cleary v. News Corp., 30 F.3d 1255, 1262-63 (9th Cir. 1994). The Court further notes that it is established in California that if goods or services are known to the public by a name, design, or physical appearance, any imitation which has the effect of deceiving buyers regarding the origin of the goods or services may be actionable as unfair competition. See 13 Witkin,

1  Summary of California Law (10th Ed. 2005) at § 98.

2      Accordingly, Plaintiff has stated a pendant state claim for
3  common law unfair competition.

4      In summary, Plaintiff has alleged sufficient facts to
5  establish Defendant's liability to Plaintiff on the four claims
6  addressed above.

7          D. Damages

8      Plaintiff seeks for copyright and trademark infringement
9  only statutory damages, arguing that they are appropriate because
10 Defendant's default has in effect precluded discovery by
11 Plaintiff as to the full extent of Defendant's infringement and
12 the amount of actual damages Plaintiff suffered based on
13 Defendant's profits.

14     The general allegations with respect to damage include
15 allegations on information and belief that the Defendant's
16 conduct was not isolated, but rather was the result of
17 Defendant's continuing involvement in advertising, marketing,
18 installing, and/or distributing the materials, including
19 reproductions, copies, or colorable imitations of the Microsoft
20 copyrighted software and/or the Microsoft trademarks, logos, and
21 service mark. (Id. p. 4.) Further, it was alleged that Defendant
22 continued to commit acts of copyright and trademark infringement
23 and was wilfully blind and acted in reckless disregard of
24 Microsoft's registered copyrights and marks. (Id. pp. 4, 7.)
25 Defendant's conduct resulted in damage to Plaintiff. (Id. p. 5.)

26          1. Copyright

27     Title 17 U.S.C. § 504 provides in pertinent part:

28     (a) **In General**. Except as otherwise provided by

11

this title, an infringer of copyright is liable
for either--

> (1) the copyright owner's actual damages
> and any additional profits of the infringer,
> as provided by subsection (b); or

> (2) statutory damages, as provided by
> subsection (c).

....

(c) Statutory Damages.--

> (1) Except as provided by clause (2) of this
> subsection, the copyright owner may elect, at
> any time before final judgment is rendered,
> to recover, instead of actual damages and
> profits, an award of statutory damages for
> all infringements involved in the action,
> with respect to any one work, for which any
> one infringer is liable individually, or for
> which any two or more infringers are liable
> jointly and severally, in a sum of not less
> than $750 or more than $30,000 as the court
> considers just. For the purposes of this
> subsection, all the parts of a compilation or
> derivative work constitute one work.

> (2) In a case where the copyright owner
> sustains the burden of proving, and the court
> finds, that infringement was committed
> willfully, the court in its discretion may
> increase the award of statutory damages to a
> sum of not more than $150,000. In a case
> where the infringer sustains the burden of
> proving, and the court finds, that such
> infringer was not aware and had no reason to
> believe that his or her acts constituted an
> infringement of copyright, the court in its
> discretion may reduce the award of statutory
> damages to a sum of not less than $200. The
> court shall remit statutory damages in any
> case where an infringer believed and had
> reasonable grounds for believing that his or
> her use of the copyrighted work was a fair
> use under section 107, if the infringer was:
> (i) an employee or agent of a nonprofit
> educational institution, library, or archives
> acting within the scope of his or her
> employment who, or such institution, library,
> or archives itself, which infringed by
> reproducing the work in copies or
> phonorecords; or (ii) a public broadcasting
> entity which or a person who, as a regular
> part of the nonprofit activities of a public

1    broadcasting entity (as defined in subsection (g)
2    of section 118) infringed by performing a published
     nondramatic literary work or by reproducing a
     transmission program embodying a performance of
3    such a work. (Emphasis added.)

4   A district court has wide discretion in determining the amount of

5   statutory damages to be awarded and should consider what is just

6   in the particular case in light of the nature of the copyright,

7   the circumstances of the infringement, and other relevant

8   circumstances. <u>Los Angeles News Service v. Reuters Television</u>

9   <u>International, Ltd.</u>, 149 F.3d 987, 996 (9th Cir. 1998). The

10  statutory damages serve both compensatory and punitive purposes,

11  so in order to effectuate the statutory policy of discouraging

12  infringement, recovery of them is permitted even absent evidence

13  of the actual damages suffered by the plaintiff or of the profits

14  reaped by the defendant. <u>Id.</u>

15      Plaintiff asserts that Defendant's conduct was wilful, but

16  Plaintiff does not seek enhanced damages for wilful infringement;

17  rather, because Defendant's conduct was wilful, Plaintiff seeks

18  the maximum amount of statutory damages for non-wilful

19  infringement of the copyright, which is $30,000.00.

20      The copyright concerned a software program, which is a type

21  of work that is exponentially more expensive to produce than a

22  single song, for example. <u>See</u>, <u>Peer International Corp. v. Pausa</u>

23  <u>Records, Inc.</u>, 909 F.2d 1332, 1337 (9th Cir. 1990) (considering

24  the compulsory nature of the licenses in question). The actual

25  number of infringements is not known; only two specific

26  distributions (February 2006 and once after October 2006) are

27  noted in the complaint, although it was alleged that Defendant

28  was in the business of selling copyrighted works and continued to

13

1 infringe the copyright. (Cmplt. pp. 2, 4.)

2    Considering all the circumstances, the Court exercises its

3 discretion to determine the appropriate amount of statutory

4 damages and concludes that an award of statutory damages in the

5 amount of $10,000.00 is just under all the circumstances.

6                    2. <u>Trademark Infringement</u>

7    Plaintiff seeks statutory damages under the Lanham Act in

8 the amount of $100,000.00 for each of the three trademarks in

9 issue (see Cmplt. p. 3).

10   Title 15 U.S.C. § 1117(c)(1) provides:

11       <u>In a case involving the use of a counterfeit mark</u>
         (as defined in section 1116(d) of this title) in
12       connection with the sale, offering for sale, or
         distribution of goods or services, the plaintiff may
13       elect, at any time before final judgment is rendered by
         the trial court, to recover, <u>instead of actual damages</u>
14       <u>and profits under subsection (a) of this section, an</u>
         <u>award of statutory damages for any such use in</u>
15       <u>connection with the sale, offering for sale, or</u>
         <u>distribution of goods or services in the amount of–</u>
16           <u>(1) not less than $500 or more than $100,000 per</u>
         <u>counterfeit mark per type of goods or services sold,</u>
17       <u>offered for sale, or distributed, as the court</u>
         <u>considers just; or</u>
18           <u>(2) if the court finds that the use of the</u>
         <u>counterfeit mark was willful, not more than $1,000,000</u>
19       <u>per counterfeit mark per type of goods or services</u>
         <u>sold, offered for sale, or distributed, as the court</u>
20       <u>considers just.</u> (Emphasis added.)

21   Plaintiff thus seeks the maximum amount of damages,

22 $100,000.00, per mark of the three marks alleged to have been

23 infringed upon; Plaintiff explains that of the four trademark

24 registrations in issue (two for Microsoft, one for Windows, and

25 one for Colored Flag Design), the Microsoft mark is listed in two

26 different classifications of goods, but Plaintiff only seeks

27 damages per counterfeit mark, or for three registrations. (Mot.

28 p. 7 n. 1.)

                                14

1    Reference to § 1116(d)(1)(B) shows that a counterfeit mark
2  is defined in pertinent part as follows:

3        As used in this subsection the term "counterfeit
      mark" means-
4
5        (i) a counterfeit of a mark that is registered on
      the principal register in the United States Patent and
6      Trademark Office for such goods or services sold,
      offered for sale, or distributed and that is in use,
7      whether or not the person against whom relief is sought
      knew such mark was so registered....

8  Thus, it appears that statutory damages are appropriate with
9  respect to the three marks, which are alleged to have been
10 infringed by Defendant's conduct.

11     The statute provides little guidance for determining the
12 amount of statutory damages. However, courts have analogized to
13 the body of case law interpreting a similar provision in the
14 Copyright Act. Phillip Morris USA, Inc. v. Castworld Products,
15 Inc., 219 F.R.D. 494, 501 (C.D.Cal. 2003) (citing Sara Lee Corp.
16 v. Bags of New York, Inc., 36 F.Supp.2d 161, 166 (S.D.N.Y.
17 1999)). This involves consideration not only of compensation for
18 the injured plaintiff, but also deterrence of future
19 infringement. Id. This is consistent with established
20 understanding in the Ninth Circuit of the policies underlying
21 trademark protection, namely, to protect consumers from being
22 misled as to the enterprise from which the goods or services
23 emanate or with which they are associated, to prevent impairment
24 of the value of the enterprise that owns the trademark, and to
25 achieve these ends in a manner consistent with the objectives of
26 free competition. See Intel Corp. v. Terabyte International,
27 Inc., 6 F.3d 614, 618 (9th Cir. 1993.) Copyright factors include
28 the defendant's profits and saved expenses, the plaintiff's lost

15

1  revenues, and the defendant's state of mind. <u>Louis Vuitton</u>
2  <u>Malletier and Oakley, Inc. v. Weit</u>, 211 F.Supp.2d 567, 584
3  (E.D.Pa 2002).

4       Here, profits, expenses, and lost revenues are matters only
5  of speculation. Plaintiff has not given the Court even the most
6  basic information regarding its loss, such as the price or value
7  of the goods or services subject to the violations. The precise
8  scope of Defendant's business is not clear. All that the
9  allegations of the complaint indicate is that the Defendant used
10 multiple counterfeit marks in once instance in February 2006 and
11 in another after October 2006; further, he continued to infringe
12 upon the marks at the time of the filing of the complaint
13 (December 2006). It appears that Defendant did so wilfully,
14 intentionally, and with a purpose unjustly to benefit from the
15 efforts of Plaintiff in promoting and selling goods and/or
16 services. Specific evidence of wilfulness includes the failure to
17 respond to requests to cease and desist contained in a letter
18 dated July 31, 2006, which was alleged to be notification to
19 Defendant of the wrongfulness of his conduct, and a failure to
20 respond to the complaint and the motion for default judgment, of
21 which it is established that Defendant had notice. The Court
22 notes that § 1111 provides that no damages shall be recovered
23 against an infringer of a registered mark unless the defendant
24 had actual notice of the registration.

25      Under the circumstances, the Court concludes that because
26 there is some evidence that the use of the confusing mark was
27 wilful and repeated, even in the absence of evidence of the
28 extent of Plaintiff's loss or the Defendant's profits, it is

16

1 appropriate to award damages for the purpose of deterrence. It is

2 alleged that Defendant was in the business of advertising,

3 marketing, and distributing computer software and components, and

4 continued to do so at the time of the filing of the complaint.

5 (Cmplt. pp. 2, 4.) Because it was alleged that the incidents were

6 not isolated and were continuing, a significant interest in

7 deterrence is presented. There is no detailed evidence regarding

8 the nature or quality of the respective services offered by

9 Plaintiff and Defendant; nevertheless, because of the likelihood

10 of confusion established by Defendant's default, the

11 circumstances necessarily demonstrate an interest in the

12 protection of the public.

13      Plaintiff seeks $100,000.00 for each of the three trademarks

14 at issue under § 1117(c)(1). This is not a case in which the

15 defendant has been shown to have engaged in the promotion and

16 sale of multiple counterfeit goods over the internet for an

17 extended period of time, imported millions of infringing

18 products, or unjustly gained huge amounts of profits. It may thus

19 be distinguished from some of the reported cases in which

20 extremely large awards have been made, such as Louis Vuitton

21 ($1,500,000 for eight marks, use of multiple domain names on the

22 internet, and egregious conduct of extensive sales of many types

23 of goods for a long period of time); Petmed Express, Inc. v.

24 Medpets.Com, Inc., 336 F.Supp.2d 1213, 1221 (S.D.Fla 2004)

25 ($400,000 for each infringing mark used on the internet plus

26 $50,000 for each infringing domain name, based on wilfulness and

27 the presumptively high scope of internet sales); and Playboy

28 Enter., Inc. v. AsiaFocus Int'l, Inc., 1998 WL 724000 (E.D.Va

17

1    1998) ($1,000,000 for wilful infringement of two counterfeit
2    domain names, and $500,000 for each category of merchandise,
3    where there was extensive use of multiple sites for sale of
4    Playboy merchandise as well as viewing of photographic images,
5    use of registered trademarks within the named sites and in e-mail
6    addresses, and active encouragement of other web sites to
7    distribute the infringing material); see also Philip Morris USA
8    Inc. v. Castworld Products, Inc., 219 F.R.D. 494, 501-02 (C.D.
9    2003) (award of $2,000,000 for wilful infringement of two famous
10   Marlboro trademarks by sale of 8,000,000 imported counterfeit
11   cigarettes of inferior quality with a street value of millions of
12   dollars). Given that the only probative evidence available to the
13   Court in the present case demonstrates wilful conduct of
14   relatively short duration and of uncertain extent or effect, the
15   Court exercises its discretion and concludes that pursuant to 15
16   U.S.C. § 1117(c)(1), an award of $100,000.00 in damages is
17   appropriate.

18        The Court notes that a successful plaintiff is entitled to
19   recover both actual damages under the Lanham Act and statutory
20   damages under the Copyright Act. Nintendo of America, Inc. v.
21   Dragon Pacific Intern., 40 F.3d 1007, 1010-11 (9th Cir. 1994),
22   cert. denied, 515 U.S. 1107 (1995). The court in Nintendo
23   reasoned that a separate award of statutory damages under both
24   the Copyright Act and the Lanham Act was appropriate when a
25   single act has violated both statutes because two separate wrongs
26   have been committed. However, the court distinguished a case in
27   which recovery of actual damages under both statutes was held to
28   be an impermissible double recovery. Id. at 1011 n. 1.

1   The Court has not found any definitive authority in the
2   Ninth Circuit, although the Court takes judicial notice of orders[2]
3   submitted in cases before district courts in the Central and
4   Eastern Districts of California, in which awards of statutory
5   damages under both statutes were made, and which Plaintiff
6   submitted after hearing.

7   It is established in this circuit that an award of actual
8   damages under the Lanham Act and statutory damages under the
9   Copyright Act is permissible because multiple wrongs have been
10  committed. Nintendo of America, Inc., 40 F.3d at 1011. Further,
11  the Court finds that there is no double recovery in awards of
12  statutory damages under both statutes because distinct injuries
13  to different interests have been suffered by the Plaintiff. See,
14  Microsoft Corp. v. Tierra Computer, Inc., 184 F.Supp.2d 1329,
15  1331 (N.D.GA 2001) (noting cases in which awards of statutory
16  damages were made under both acts). Further, statutory damages
17  serve not only as a substitute for compensation, but also as a
18  penalty and a deterrent to future violations. Id. It is clear
19  that in this case actual damages are difficult or impossible to
20  calculate, and this is largely due to Defendant's own conduct and
21  inaction. Considering all these factors, and exercising its
22  considerable discretion, the Court concludes that an award of
23  statutory damages for trademark and copyright infringement does
24  not violate the rule against double recoveries.
25  /////

26

27  _____
    [2] The two orders are in Microsoft v. Image & Business Solutions, Inc., et al., 2007 WL 2874440 (C.D.Cal.
28  2007) and Microsoft v. Hargadon Computer, Inc. et al., Eastern District of California Case No. CIV S-03-1486
    LKK/GGH.

1          E. <u>Injunctive Relief</u>

2      Plaintiff seeks injunctive relief against future copyright

3  and trademark infringement.

4              1. <u>Injunction against Trademark Infringement</u>

5      Title 15 § 1116(a) provides:

6          The several courts vested with jurisdiction of
           civil actions arising under this chapter shall have
7          power to grant injunctions, according to the principles
           of equity and upon such terms as the court may deem
8          reasonable, to prevent the violation of any right of
           the registrant of a mark registered in the Patent and
9          Trademark Office or to prevent a violation under
           subsection (a), (c), or (d) of section 1125 of this
10         title. Any such injunction may include a provision
           directing the defendant to file with the court and
11         serve on the plaintiff within thirty days after the
           service on the defendant of such injunction, or such
12         extended period as the court may direct, a report in
           writing under oath setting forth in detail the manner
13         and form in which the defendant has complied with the
           injunction. Any such injunction granted upon hearing,
14         after notice to the defendant, by any district court of
           the United States, may be served on the parties against
15         whom such injunction is granted anywhere in the United
           States where they may be found, and shall be operative
16         and may be enforced by proceedings to punish for
           contempt, or otherwise, by the court by which such
17         injunction was granted, or by any other United States
           district court in whose jurisdiction the defendant may
18         be found.

19     It is appropriate to award injunctive relief in connection

20  with a default judgment pursuant to the Lanham Act. <u>Philip Morris</u>

21  <u>USA Inc. v. Castworld Products, Inc.</u>, 219 F.R.D. 494, 502

22  (C.D.Cal. 2003) (finding permanent injunctive relief appropriate

23  because the claims otherwise warranted an injunction, the

24  defendant had chosen to ignore the lawsuit, and failure to grant

25  the injunction would needlessly expose the plaintiff to the risk

26  of continuing irreparable harm); <u>Pepsico, Inc. v. California</u>

27  <u>Security Cans</u>, 238 F.Supp.2d 1172, 1177-78 (C.D. 2002) (granting

28  an injunction barring use of a trademark on counterfeit products

20

1   where it was consistent with the relief requested in the
2   complaint, and it was not absolutely clear that the wrongful
3   behavior had ceased and would not begin again).

4        An injunction is an equitable remedy appropriate where there
5   is irreparable injury and inadequacy of legal remedies; the Court
6   will balance the competing claims and consider the potential
7   injury and convenience to each party of granting or withholding
8   the injunctive relief, as well as consider the public interest.
9   Weinberger v. Romero-Barcelo, 456 U.S. 305, 312-13 (1982).

10       The Lanham Act gives courts the "power to grant injunctions,
11  according to the principles of equity and upon such terms as the
12  court may deem reasonable, to prevent the violation" of a
13  registrant's rights. 15 U.S.C. § 1116(a). A plaintiff is not
14  automatically entitled to an injunction simply because it proved
15  its affirmative claims; the grant of injunctive relief is not a
16  ministerial act flowing as a matter of course. Pyrodyne Corp. v.
17  Pyrotronics Corp., 847 F.2d 1398, 1402 (9th Cir. 1988). However,
18  the owner of a registered mark is generally entitled to
19  injunctive relief because there is no adequate remedy at law for
20  the injury caused by a defendant's continuing infringement. See
21  Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180-81
22  (9th Cir. 1988); Lone Star Steakhouse & Saloon v. Alpha of Va.,
23  Inc., 43 F.3d 922, 939 (4th Cir. 1995). Demonstrating a
24  likelihood of confusion is generally sufficient in trademark
25  infringement or unfair competition cases to permit a presumption
26  that the plaintiff will suffer irreparable harm. Vision Sports,
27  Inc. v. Melville Corp., 888 F.2d 609, 612 n. 3 (9th Cir. 1989).
28  Denying injunctive relief would force Plaintiff to endure

21

continuing infringement and to bring successive suits for money damages. Further, there is a strong interest in protecting consumers. In cases where the infringing use is for a similar service, broad injunctions are especially appropriate. <u>Century 21 Real Estate Corp. v. Sandlin</u>, 846 F.2d at 1180-81.

The Court finds that, as alleged in the complaint, Defendant's wrongful conduct included the advertising, marketing, installing, and/or distribution of "infringing materials," specifically, reproductions, copies, or colorable imitations of the Microsoft copyrighted software and/or the Microsoft trademarks, logos, and service mark described in the complaint. (Cmpt. p. 4.) The Court further finds that, as Plaintiff alleged in the complaint, Plaintiff's trademarks and service mark are unique and valuable property which have no readily determinable market value; Defendant's infringement caused harm to Plaintiff that could not be remedied by a monetary award; Defendant's wrongful conduct and damage resulting therefrom are continuing; and if Defendant's wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity of the infringing materials. (Cmplt p. 7.)

The Court finds that Plaintiff has established that it is the owner of four registered trademarks, one including a service mark: "MICROSOFT," Trademark and Service Mark Registration No. 1,200,236, for computer programs and computer programming services; MICROSOFT," Trademark Registration No. 1,256,083, for computer hardware and software manuals, newsletters, and computer documentation; "WINDOWS," Trademark Registration No. 1,872,264

for computer programs and manuals sold as a unit; and COLORED FLAG DESIGN, Trademark Registration No. 2,744,843, for computer software. Defendant engaged in trademark infringement of these brands and continues to do so. Defendant's infringement was wilful.

The Court finds that Plaintiff is entitled to permanent injunctive relief against future infringement of its marks by Defendant because Plaintiff has established a likelihood of confusion if Defendant continues to use Plaintiff's mark, has shown that irreparable harm will result absent such relief, and finally has shown that a permanent injunction will serve the public interest. Further, the Court finds that with respect to the relative hardships imposed by an injunction, the balance tips in favor of issuance. Plaintiff is only seeking to enjoin illegal activity. The injunction will not adversely affect any of Defendant's legitimate business operations, nor will it suffer any cognizable hardship as a result of its issuance. Conversely, Plaintiff will suffer harm in the form of disfavor from customers if Defendant's activities continue. The Court further finds that injunctive relief would serve the public interest because the pertinent law protects not only the private interests of the trademark owner, but also the public's interest in not being confused by the infringing products. The Court finds that an injunction would deter future infringement.

2. Injunction against Copyright Infringement

Plaintiff also seeks injunctive relief against further copyright infringement by Defendant.

Title 17 U.S.C. § 502 states:

23

(a) <u>Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.</u>

(b) Any such injunction may be served anywhere in the United States on the person enjoined; it shall be operative throughout the United States and shall be enforceable, by proceedings in contempt or otherwise, by any United States court having jurisdiction of that person. The clerk of the court granting the injunction shall, when requested by any other court in which enforcement of the injunction is sought, transmit promptly to the other court a certified copy of all the papers in the case on file in such clerk's office (emphasis added).

As a general rule, absent a great public injury, a permanent injunction will be granted when liability has been established and there is a threat of a continuing violations. <u>Cadence Design Systems, Inc. v. Avant! Corp.</u>, 125 F.3d 824, 829 (9th Cir. 1997); <u>MAI Systems Corp. v. Peak Computer, Inc.</u>, 991 F.2d 511, 520 (9th Cir. 1993) (issuing an injunction against further infringement of protected software rights where the plaintiff demonstrated that the defendant had computers in its loaner inventory with the protected software on it).

Generally a party seeking a preliminary injunction must show either a likelihood of success on the merits and the possibility of irreparable injury, or that serious questions going to the merits were raised and the balance of hardships tips sharply in its favor; however, because in a copyright infringement claim a showing of a reasonable likelihood of success on the merits raises a presumption of irreparable harm, a plaintiff need only show a likelihood of success on the merits to obtain a preliminary injunction. <u>Micro Star v. Formgen, Inc.</u>, 154 F.3d

24

1  1107, 1109 (9th Cir. 1998).

2      Here, Plaintiff seeks a permanent injunction. Plaintiff has
3  already shown actual success on the merits because the complaint
4  states a claim for infringement, and Defendant has defaulted;
5  further, Plaintiffs have alleged that unless restrained,
6  Defendant will continue to cause irreparable injury for which
7  there is no full monetary compensation. This is sufficient for a
8  permanent injunction. Sony Music Entertaniment, Inc. v. Global
9  Arts Productions, 45 F.Supp.2d 1345, 1347 (S.D.Fla. 1999). An
10 injunction against further infringement and even infringement of
11 future works is permitted, and it is appropriate to grant an
12 injunction on an application for default judgment. Princeton
13 University Press v. Michigan Document Services, Inc., 99 F.3d
14 1381, 1392-93 (6th Cir. 1996) (noting that an injunction of works
15 copyrighted in the future is supported by the weight of
16 authority); Elektra Entertainment Group Inc. v. Crawford, 226
17 F.RD. 388, 393-94 (C.D.Cal. 2005) (granting a final injunction on
18 default judgment to enjoin defendant from directly or indirectly
19 infringing plaintiffs' rights under federal or state law in
20 copyrighted recordings, whether then in existence or later
21 created, where requested terms of injunction were the same as
22 those prayed for in complaint, proposed injunctive relief was
23 appropriate, the plaintiffs sent two letters to defendant before
24 plaintiffs sought entry of default which warned of default
25 judgment, defendant failed to respond to serious claims brought
26 against him despite receiving adequate notice, and failure to
27 grant injunction would have resulted in plaintiffs' continued
28 exposure to harm with no method of recourse).

1      Here, the Court finds that, as Plaintiffs alleged in the

2  complaint, Defendant infringed Plaintiff's valid copyright held

3  in Windows XP Pro (including user's reference manuals, user's

4  guides, and screen displays), duly and properly registered with

5  the United States Copyright Office, Registration Certificate TX

6  5-407-055. (Cmplt. p. 3.) Further, Defendant engaged in wrongful

7  conduct, including advertising, marketing, installing, and/or

8  distribution of infringing materials, specifically reproductions,

9  copies, or colorable imitations of the Microsoft copyrighted

10  software and/or the Microsoft trademarks, logos, and service mark

11  described in the Complaint, and that Defendant wilfully continued

12  to commit acts of copyright and trademark infringement against

13  Plantiff. (Cmplt. pp. 3-4.) Further, as previously noted, it is

14  alleged that Plaintiffs have no adequate remedy at law. (Cmplt.

15  pp. 5-6.)

16      The Court finds that Defendant's lack of intent to comply

17  with the copyright restrictions is demonstrated by the

18  Defendant's failure to reply to the letter that Plaintiffs sent

19  to the Defendant which notified Defendant that his conduct

20  infringed Plaintiff's intellectual property rights and demanded

21  cessation of the conduct, and by Defendant's further failure to

22  respond to serious claims brought against him despite receiving

23  adequate notice. It appears that the failure to grant the

24  requested injunction would result in Plaintiff's continued

25  exposure to harm with no method of recourse. There does not

26  appear to be any public injury that would result from issuance of

27  the injunction. Accordingly, the Court concludes that injunctive

28  relief is appropriate.

1    However, the injunctive relief sought is too broad.

2 Generally an injunction must be narrowly tailored to remedy only

3 the specific harms shown by the plaintiffs rather than to enjoin

4 all possible breaches of the law; injunctive relief concerning a

5 copyright will be limited to works that infringe on the

6 Plaintiffs' copyright. Iconix, Inc. v. Tokuda, 457 F.Supp.2d 969,

7 998-1002 (N.D.Cal.2006) (preliminary injunction in copyright

8 case). Further, it is established that every order granting an

9 injunction shall set forth the reasons for its issuance; shall be

10 specific in its terms; shall describe in reasonable detail, and

11 not by reference to the complaint or other document, the act or

12 acts sought to be restrained; and is binding only upon the

13 parties to the action, their officers, agents, servants,

14 employees, and attorneys, and upon those persons in active

15 concert or participation with them who receive actual notice of

16 the order by personal service or otherwise. Fed. R. Civ. P.

17 65(d). Even without objections by a party, a court has an

18 independent duty to assure that an injunction is specific in its

19 terms and describes in reasonable detail the acts sought to be

20 restrained. See, EFS Marketing, Inc. v Russ Berrie & Co., 76 F.3d

21 487, 493-94 (2nd Cir. 1996); 4 Nimmer on Copyright, § 14.06(C)

22 (2006).

23    Here, the permanent injunction proposed by Plaintiff (Doc.

24 15) would enjoin infringement with respect to not only the

25 computer software programs that are the subject of the copyright

26 and trademark protection, but also things that are packaged and

27 distributed with the protected programs, such as unspecified

28 proprietary components, end user license agreements (EULA's), and

27

certificates of authenticity (COA's) (Prop. Inj. pp. 1-2), which
pursuant to the complaint are additional to the copyrighted
Windows XP Pro operating system, user's reference manuals, user's
guides, and screen displays (Cmplt. pp. 1-2), and further appear
not to be included in the matters described as the things for
which there are registered trademarks, namely, computer programs
and programming services; computer hardware and software manuals,
newsletters, and computer documentation; computer programs and
manuals sold as a unit; and computer software (Cmplt. p. 3).

Likewise, the proposed injunction would cover infringement
of any other works now or hereafter protected by any of
Plaintiff's trademarks or copyrights (Prop. Inj. p. 2). It would
also cover the use of names, logos, or "other variations
thereof," terminology which is not sufficiently specific. These
aspects of the injunction would be unclear and also would exceed
the scope of the infringement.

Accordingly, these aspects should be eliminated from the
injunctive relief sought.

The Court should order Defendant Matthew Evans, and his
agents, servants, employees, representatives, successors and
assigns, and all those persons or entities acting in concert or
participation with him, to be permanently enjoined and restrained
from

1) imitating, copying, or making any other infringing use or
infringing distribution of the Microsoft Windows XP Professional
(Windows XP Pro) software package and operating system, including
reference manuals, user's guides, and screen displays, protected
by Microsoft's copyright number TX 5-407-055; and

28

2) imitating, copying, or making any other infringing use or infringing distribution of the matters covered by registered trademarks and service mark, including the following: "MICROSOFT," Trademark and Service Mark Registration No. 1,200,236, for computer programs and computer programming services; "MICROSOFT," Trademark Registration No. 1,256,083, for computer hardware and software manuals, newsletters, and computer documentation, including reference, user, instructional, and general utilities manuals and data sheets for computer hardware and software users; "WINDOWS," Trademark Registration No. 1,872,264, for computer programs and manuals sold as a unit; and COLORED FLAG DESIGN, Trademark Registration No. 2,744,843, for computer software; user manuals therefor sold as a unit therewith; computers; computer hardware; computer application programs; computer peripherals; computer mice and pointing devices; DVD players; digital cellular phones; blank smart cards; communication servers and computer application and operating system programs for use therewith; video game machines and operating system software for use therewith and in playing electronic games; computer keyboards; computer and video game joysticks; and video game interactive control floor pads; and

3) manufacturing, assembling, producing, distributing, offering for distribution, circulating, selling, offering for sale, advertising, importing, promoting, or displaying any item or thing included in the matters listed in paragraph (2) above and bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of any of Microsoft's registered trademarks or service mark listed in paragraph (2) above; and

1    4) using any simulation, reproduction, counterfeit, copy, or

2  colorable imitation of any thing covered by Microsoft's

3  registered trademarks or service mark listed in paragraph (2)

4  above, in connection with the manufacture, distribution, offering

5  for distribution, sale, offering for sale, advertisement,

6  promotion, or display of any software, component, end user

7  license agreement, certificate of authenticity, or other item or

8  thing not authorized or licensed by Microsoft; and

9    5) using any false designation of origin or false

10  description which can or is likely to lead the trade or public or

11  individuals erroneously to believe that any software, component,

12  end user license agreement, certificate of authenticity, or other

13  item or thing has been manufactured, produced, distributed,

14  offered for distribution, advertised, promoted, displayed,

15  licensed, sponsored, approved, or authorized by or for Microsoft,

16  when such is not true in fact; and

17    6) using the names or logos of any of Microsoft's copyright

18  and/or trademark-protected software programs in any of

19  Defendant's trade or corporate names; and

20    7) engaging in any other activity constituting an

21  infringement of any of Microsoft's trademarks, service mark

22  and/or copyrights, or of Microsoft's rights in, or right to use

23  or to exploit these trademarks, service mark, and/or copyrights,

24  or constituting any dilution of Microsoft's name, reputation, or

25  goodwill; and

26    8) assisting, aiding, or abetting any other person or

27  business entity in engaging in or performing any of the

28  activities referred to in paragraphs numbered one through eight

30

1 above.

2          F. <u>Attorney's Fees</u>

3      Plaintiff seeks an award of attorney's fees pursuant to both

4 17 U.S.C. § 505 and 15 U.S.C. § 1117(a).

5      With respect to the copyright claim, 17 U.S.C. § 505 states:

6          In any civil action under this title, the court
           in its discretion may allow the recovery of full
7          costs by or against any party other than the
           United States or an officer thereof. Except as
8          otherwise provided by this title, the court may
           also award a reasonable attorney's fee to the
9          prevailing party as part of the costs.

10 Under this provision, attorney's fees are to be awarded to

11 prevailing parties in the court's discretion after consideration

12 various factors, including but not limited to frivolousness,

13 motivation, objective unreasonableness (both as to legal and

14 factual components of the case), culpability, the degree of

15 success obtained, the strength of the case relative to the costs

16 of the litigation, the pecuniary circumstances of the parties,

17 and the need in the particular circumstances of the case to

18 advance considerations of compensation and deterrence; the award

19 should further the underlying purposes of the Copyright Act.

20 <u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517, 535 n. 19 (1994);

21 <u>Fantasy, Inc. v. Fogerty</u>, 94 F.3d 553, 557-60 (9th Cir. 1996). The

22 objectives of the Copyright Act include discouraging infringement

23 and increasing public exposure to a creative work. <u>Fantasy, Inc.

24 v. Fogerty</u>, 94 F.3d at p. 559. A court has the discretion to

25 award interest on the fees. <u>See</u>, <u>Fantasy, Inc. v. Fogerty</u>, 94

26 F.3d at p. 561.

27      Here, an award of attorney's fees would further the

28 deterrent and compensatory purposes of the act and would reward

31

1  successful handling of the litigation.

2      With respect to the trademark claim, 15 U.S.C. § 1117(a)

3  concerns violations of any right of a registrant of a mark or a

4  violation under § 1125(a) that have been established in a civil

5  action. It states in pertinent part, "The court in exceptional

6  cases may award reasonable attorney fees to the prevailing

7  party." Exceptional cases includes cases in which trademark

8  infringement is malicious, fraudulent, deliberate, or wilful.

9  Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1409 (9th Cir.

10  1993); Philip Morris USA Inc. v. Castworld Products, Inc., 219

11  F.R.D. 494, 502 (C.D.Cal.2003).

12      To determine a reasonable attorney fee award under §

13  1117(a), courts employ the lodestar method. See, Earthquake Sound

14  Corp. v. Bumper Industries, 352 F.3d 1210, 1219 (9th Cir. 2003).

15      Case law construing what a reasonable fee is applies

16  uniformly to all federal fee-shifting statutes. City of

17  Burlington v. Dague, 505 U.S. 557, 561 (1992). "The most useful

18  starting point for determining the amount of a reasonable fee is

19  the number of hours reasonably expended on the litigation

20  multiplied by a reasonable hourly rate." Hensley v. Eckerhart,

21  461 U.S. 424, 433 (1983). This figure, the "lodestar," is

22  presumed to be the reasonable fee contemplated by the statute.

23  City of Riverside v. Rivera, 477 U.S. 560, 568 (1986). Factors to

24  consider in the initial lodestar calculation are the novelty and

25  complexity of the issues, the special skill and experience of

26  counsel, the quality of the representation, the results obtained,

27  and the superior performance of counsel. Blum v. Stenson, 465

28  U.S. 886, 898-900 (1984). As to the reasonable hourly rate, a

32

district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation. <u>Blum v. Stenson</u>, 465 U.S. 886, 895 n. 11 (1984). Either current or historical rates prevailing rates may be used; use of current rates or an appropriate adjustment for delay in payment may be reasonable. <u>Missouri v. Jenkins</u>, 491 U.S. 274, 283-84 (1989). Local Rule 54-293 also sets forth the procedure to be followed, the matters to be shown by an applicant, and the criteria to be followed in making awards.

Here, the violations were deliberate and wilful. Thus, the Court determines that the case is exceptional, and an award of attorney's fees would be appropriate.

The declaration of Katherine M. Dugdale establishes that she is a partner in her Santa Monica firm and an attorney with primary responsibility for this case; she has handled matters of this type for nine years and has been an attorney for fourteen years; she and Jennifer N. Chiarelli, a 2000 law school graduate, have worked on the case; Dugdale's time was billed at a rate of $387 per hour, and Chiarelli's at $301.50 per hour; based on Dugdale's experience and familiarity with rates charged by Los Angeles attorneys with similar experience and expertise, the fees incurred are reasonable and appropriate.

For preparation and review of the complaint and accompanying documents and service, 7.4 hours were expended, for a sum of $2,769.75; for preparation and review of request for entry of default, 2.1 hours were expended, for a sum of $633.15.

Considering the reasonable hourly rate and number of hours expended, and further considering the skill of the attorneys, the

1  issues, and the quality of the representation and results
2  obtained, the Court concludes that the amount sought, $3,402.90,
3  is reasonable.

4      With respect to costs, Plaintiff withdrew its request for
5  costs at the hearing on this motion.

6          F. <u>Status of Defendant</u>

7      The declaration of Dugdale establishes that Defendant is not
8  an infant, incompetent, or a person protected by the
9  Servicemembers Civil Relief Act of 1940, 50 App. U.S.C. §§ 501,
10 521.

11          G. <u>Discretionary Factors</u>

12     Here, it does not clearly appear that there is any risk of
13 mistake or excusable neglect on the part of anyone with a
14 potential interest in the subject matter of the instant action.
15 Further, given the state of the pleadings, there is no apparent
16 likelihood of a dispute as to a material fact essential to the
17 Plaintiffs' case. Defendant's delay has been long-standing, and
18 there is no cognizable showing of excuse on the part of
19 Defendant. There does not appear to be any reason why the general
20 policy in favor of a decision on the merits would warrant
21 refusing to enter the requested default judgment.

22     Accordingly, the Court finds that Plaintiff has shown
23 entitlement to a default judgment.

24          G. <u>Defendant's Address for Service of this Order</u>

25     At the hearing, Defendant Matthew Evans represented to the
26 Court that his address is 5900 Chancellor Way, Riverbank,
27 California 95367. His telephone numbers are (209) 481-9230 (cell)
28 and (209) 863-8201 (land line).

34

1    II. <u>Recommendation</u>

2    Accordingly, it IS RECOMMENDED that

3    1) Plaintiff's motion for default judgment BE GRANTED; and

4    2) The Clerk BE DIRECTED to enter judgment in favor of

5 Plaintiff Microsoft Corporation and against Defendant Matthew

6 Evans in the amount of $110,000.00 in statutory damages and

7 $3,402.90 in attorney's fees; and

8    3) The Clerk BE DIRECTED to enter a judgment in favor of

9 Plaintiff Microsoft Corporation and against Defendant Matthew

10 Evans that enjoins Defendant Matthew Evans his agents, servants,

11 employees, representatives, successors and assigns, and all those

12 persons or entities acting in concert or participation with him,

13 to be permanently enjoined and restrained from

14    a) imitating, copying, or making any other infringing

15 use or infringing distribution of the Microsoft Windows XP

16 Professional (Windows XP Pro) software package and operating

17 system, including reference manuals, user's guides, and screen

18 displays, protected by Microsoft's copyright number TX 5-407-055;

19 and

20    b) imitating, copying, or making any other infringing

21 use or infringing distribution of the matters covered by

22 registered trademarks and service mark, including the following:

23 "MICROSOFT," Trademark and Service Mark Registration No.

24 1,200,236, for computer programs and computer programming

25 services; "MICROSOFT," Trademark Registration No. 1,256,083, for

26 computer hardware and software manuals, newsletters, and computer

27 documentation, including reference, user, instructional, and

28 general utilities manuals and data sheets for computer hardware

35

25

1  and software users; "WINDOWS," Trademark Registration No.

2  1,872,264, for computer programs and manuals sold as a unit; and

3  COLORED FLAG DESIGN, Trademark Registration No. 2,744,843, for

4  computer software; user manuals therefor sold as a unit

5  therewith; computers; computer hardware; computer application

6  programs; computer peripherals; computer mice and pointing

7  devices; DVD players; digital cellular phones; blank smart cards;

8  communication servers and computer application and operating

9  system programs for use therewith; video game machines and

10  operating system software for use therewith and in playing

11  electronic games; computer keyboards; computer and video game

12  joysticks; and video game interactive control floor pads; and

13       c) manufacturing, assembling, producing, distributing,

14  offering for distribution, circulating, selling, offering for

15  sale, advertising, importing, promoting, or displaying any item

16  or thing included in the matters listed in paragraph (b) above

17  and bearing any simulation, reproduction, counterfeit, copy, or

18  colorable imitation of any of Microsoft's registered trademarks

19  or service mark listed in paragraph (b) above; and

20       d) using any simulation, reproduction, counterfeit,

21  copy, or colorable imitation of any thing covered by Microsoft's

22  registered trademarks or service mark listed in paragraph (b)

23  above, in connection with the manufacture, distribution, offering

24  for distribution, sale, offering for sale, advertisement,

25  promotion, or display of any software, component, end user

26  license agreement, certificate of authenticity, or other item or

27  thing not authorized or licensed by Microsoft; and

28       e) using any false designation of origin or false

description which can or is likely to lead the trade or public or individuals erroneously to believe that any software, component, end user license agreement, certificate of authenticity, or other item or thing has been manufactured, produced, distributed, offered for distribution, advertised, promoted, displayed, licensed, sponsored, approved, or authorized by or for Microsoft, when such is not true in fact; and

f) using the names or logos of any of Microsoft's copyright and/or trademark-protected software programs in any of Defendant's trade or corporate names; and

g) engaging in any other activity constituting an infringement of any of Microsoft's trademarks, service mark and/or copyrights, or of Microsoft's rights in, or right to use or to exploit these trademarks, service mark, and/or copyrights, or constituting any dilution of Microsoft's name, reputation, or goodwill; and

h) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs numbered one through eight above; and

4) The Clerk of the Court IS DIRECTED to serve a copy of this order by mail on Defendant Matthew Evans at 5900 Chancellor Way, Riverbank, California 95367.

This report and recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after

37

1   being served with a copy, any party may file written objections
2   with the Court and serve a copy on all parties. Such a document
3   should be captioned "Objections to Magistrate Judge's Findings
4   and Recommendations." Replies to the objections shall be served
5   and filed within ten (10) <u>court</u> days (plus three days if served
6   by mail) after service of the objections. The Court will then
7   review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636
8   (b)(1)(C). The parties are advised that failure to file
9   objections within the specified time may waive the right to
10  appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d
11  1153 (9th Cir. 1991).

12
13  IT IS SO ORDERED.

14  **Dated:** __October 16, 2007__                    __/s/ Sandra M. Snyder__
                                    UNITED STATES MAGISTRATE JUDGE
15
16
17
18
19
20
21
22
23
24
25
26
27
28